# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 1, 2011

Lyle W. Cayce
Clerk

No. 09-11031
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOYCE M. SIMMONS, doing business as Diamond Notary and Tax Service,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:08–CR–131-1

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Joyce M. Simmons appeals the sentence imposed following her guilty plea conviction for six counts of preparation of false tax returns. The district court sentenced Simmons to the statutory maximum sentence of three years of imprisonment on each count, and it ordered that the sentences would run consecutively for a total of 216 months. It also ordered Simmons to pay

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

$28,261,295.08 in restitution to the Internal Revenue Service (IRS).   We AFFIRM.

## I.

Simmons argues that the district court erred by finding that the amount of tax loss for her offense was over $28 million.  She maintains that the district court erred because the $28 million estimation was not conservative and reasonable, because the sample of forty-one tax returns investigated by the IRS was not a random sample, and because she was not given enough time to prepare a defense to the allegation that the estimated loss was $28 million prior to the hearing regarding her initial plea agreement.  She further contends that the loss calculation was incorrect because it included tax returns filed for the 2002 tax year, for which the statute of limitations expired before her indictment, and the 2006 tax year, when she alleges she leased her business to others and did not participate in preparing tax returns.  She also asserts that the loss amount calculation was unconstitutional under *United States v. Booker,* because it was based on facts not admitted by her or proved to a jury beyond a reasonable doubt.  543 U.S. 220 (2005).

While Simmons objected to the amount of loss calculation in the district court, she argued only that the amount of loss should be lower for equitable reasons and that she did not operate the business in tax year 2006.  She did not raise any of the arguments that she raises on appeal except for her argument that she leased her business to others in tax year 2006.  Thus, Simmons' argument regarding tax year 2006 is reviewed for clear error, while her remaining arguments are reviewed for plain error.  *See United States v. Neal,* 578 F.3d 270, 272-73 (5th Cir. 2009).

The guidelines commentary specifically states that reasonable estimation of tax loss is allowed, and other courts have approved of the use of roughly the same method of estimation used by the district court.  *See* U.S.S.G. § 2T1.1, cmt. n.1 (2008); *United States v. Bryant,* 128 F.3d 74, 75-76 (2d Cir. 1997); *United*

*States v. Maye,* No. 99-4556, 2000 WL 223344 at *1 (4th Cir. 2000) (unpublished). The evidence in the pre-sentence report (PSR) and the testimony of IRS Agent Shannon Dawson established the method by which the estimated tax loss was calculated. While Simmons correctly states that the forty-one tax returns investigated by Agent Dawson were not a completely random sample, the record does not indicate that those returns would have a higher falsity rate than any other returns prepared by Simmons. Moreover, the PSR correctly noted that Agent Dawson's calculation was conservative because she used the lower of two reasonable falsity percentages that she calculated from the investigated sample, and she did not include any tax loss from approximately 3,000 tax returns prepared by Simmons that did not include a Schedule C. As the method of estimating the tax loss was reasonable and Simmons did not produce evidence contradicting it, the district court did not commit error, plain or otherwise, in its tax loss calculation. *See United States v. Clark,* 139 F.3d 485, 490 (5th Cir. 1998).

Although Simmons' counsel received Agent Dawson's calculation of estimated loss the day before the hearing at which Simmons' first plea agreement was rejected, the calculation was fully explained at that hearing, which occurred over five months before sentencing, giving Simmons more than ample time to prepare any defense she desired. Also, her contention that the district court improperly included tax returns filed in tax year 2002 in the estimated loss calculation is refuted by the record as it shows that only tax returns filed in tax years 2003-2007 were included.

Though Simmons argued at sentencing that she did not run her tax preparation business in tax year 2006, she did not present any evidence supporting her claim, and the PSR indicated that she ran the business from 2002 until 2008. At sentencing, the government stated that its investigation revealed that Simmons executed a lease agreement with another person to manage the tax preparation business at the end of 2006, but that Simmons maintained

control of the business despite the lease. Because Simmons did not present evidence contradicting the evidence set forth in the PSR, the district court did not err by accepting it. *See Clark,* 139 F.3d at 490.

Simmons' *Booker* argument is without merit. By rendering the guidelines advisory only, *Booker* eliminated the Sixth Amendment concerns that prohibited a sentencing judge from finding all facts relevant to sentencing. *United States v. Mares,* 402 F.3d 511, 519 (5th Cir. 2005). Hence, the district court's finding "by a preponderance of the evidence all the facts relevant to the determination of a [g]uideline sentencing range" was not error. *Id.*

## II.

Simmons next argues that the district court erred by applying an enhancement for her utilizing sophisticated means during the offense. She contends that the means she utilized were not sophisticated and that an enhancement for use of a special skill pursuant to U.S.S.G. § 3B1.3 should not have applied because she received an enhancement for being in the business of preparing tax returns. She asserts that the enhancement was not appropriate because a sophisticated means enhancement was not applied in *United States v. Poltonowicz*, 353 F. App'x 690 (3d Cir. 2009), even though the defendant in that tax preparation fraud case had previously worked as an analyst for the IRS criminal investigation division.

While Simmons was not a tax attorney or an accountant, special training is not necessary for the application of a sophisticated means enhancement. *See United States v. Charroux*, 3 F.3d 827, 837 (5th Cir. 1993). The evidence presented in the PSR showed that Simmons operated a tax return preparation business, trained and instructed employees on preparing false tax returns and creating fraudulent supporting documentation, and purchased personal information used to claim false dependents from clients and the homeless. Her argument that she could not receive an enhancement under § 3B1.3 and an enhancement for being in the business of preparing tax returns is irrelevant as

she did not receive an enhancement under § 3B1.3. In addition, her reliance under *Poltonowicz* is misplaced as that case did not address the issue of a sophisticated means enhancement, and that opinion does not indicate whether a sophisticated means enhancement was applied or not. *See Poltonowicz*, 353 F. App'x at 691-95. Given the complex nature of Simmons' tax preparation fraud scheme, the district court's finding that she used sophisticated means was plausible in light of the record as a whole, and, therefore, not clearly erroneous. *See United States v. Mata*, 624 F.3d 170, 173 (5th Cir. 2010).

III.

Simmons then argues that the district court erred by applying a four-level enhancement for her being an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. She asserts that there were not five participants of the criminal activity because her employees were not involved in the preparation of false tax returns and that the criminal activity was not otherwise extensive because she acted alone. She bases her argument on a statement in the PSR prepared after her initial guilty plea in which Agent Dawson stated that Simmons' employees had asserted that, in preparing a tax return, they did not include a Schedule C unless the taxpayer legitimately had a need for one.

The information in the PSR indicated that Simmons employed at least twelve people during the operation of her tax return preparation fraud scheme. The PSR also showed that Simmons directed her employees to prepare false tax returns, got upset if they did not attach a Schedule C to a return, instructed them as to what types of businesses to include on a Schedule C, and instructed them to create false receipts to justify the information on Schedule C's that were challenged by the IRS. This information indicated that all of the elements for the application of the enhancement were met as it showed that Simmons organized or led the criminal activity, that there was at least one other criminally responsible participant, and that the criminal activity included more

than five participants. *See United States v. Ho*, 311 F.3d 589, 610 (5th Cir. 2002). While the original PSR may have indicated that Simmons' employees denied participating in the criminal activity, the information in the updated PSR showed that the enhancement was proper. Because Simmons did not present any evidence at sentencing to contradict the evidence in the updated PSR, the district court did not clearly err by accepting the evidence as set forth in it and applying the enhancement. *See Clark*, 139 F.3d at 490.

## IV.

Simmons argues that the district court erred by applying an enhancement for obstruction of justice. She asserts that she transferred all of the property that she did not report on her financial affidavit to her brother before her indictment and arrest, and that she eventually provided the district court with documentation showing the transfer. She maintains that her transfer of the property was legitimate because she suffered from Hepatitis C and was concerned for the care of her daughter, and because her brother agreed to care for her daughter. She contends that her testimony regarding her financial condition and the transfer of the property was truthful and that the district court's finding that she committed perjury was incorrect. In a related argument, she asserts that the district court erred by denying her a reduction for acceptance of responsibility because its conclusion that she committed perjury was false.

Simmons' sole challenge to the denial of a reduction for acceptance of responsibility is her argument that the district court should not have found that she committed perjury and applied the obstruction of justice enhancement; she does not argue that this is one of the rare cases in which both adjustments should apply. So, the only issue presented is whether the district court clearly erred by denying a reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, cmt. n.4 (2008).

At the hearing regarding her financial status, Simmons testified that she legitimately sold the property worth nearly $1,000,000 to her brother for $80,000, and that the sale was completed on July 15, 2008, before her indictment.  She averred that her brother paid her in cash; she did not produce, however, any evidence of payment from him, and could not remember what happened to the money that he paid her.  Furthermore, on September 3, 2008, after the alleged transfer of the property and after she filed the financial affidavit that did not include the property at her initial appearance, Simmons – not her brother – filed a lawsuit challenging the tax appraisal of one of the pieces of property she allegedly sold to her brother.  While she stated that the lawsuit was filed in her name because she was working for her brother at the time, this does not explain the allegation in the lawsuit that she was the owner of the property at all relevant times.  As Simmons' testimony was not believable and was contradicted by court records, the district court's determination that she committed perjury, its application of the enhancement for obstruction of justice, and its corresponding denial of a reduction for acceptance of responsibility were plausible in light of the record as a whole, and, therefore, not clearly erroneous.  *See United States v. Gonzales*, 436 F.3d 560, 586 (5th Cir. 2006).

V.

For the first time on appeal, Simmons argues that the district court erred by applying two criminal history points for her committing the offense while on deferred adjudication probation.  She asserts that her probation was extended in her prior case because she was indigent and could not pay $5,547 in restitution that she had been ordered to pay.  She maintains that the district court erred by applying the criminal history points because criminal history points should not be attributed solely because of a defendant's indigence.

Because Simmons did not object to the application of the criminal history points in the district court, we review this issue for plain error only.  *See United States v. John*, 597 F.3d 263, 282 (5th Cir. 2010).

The record shows Simmons' probation for one of her prior convictions was extended because she failed to pay ordered restitution, but that her probation in that case expired before the commission of the present offense. Simmons, however, was still on deferred adjudication probation for a different prior conviction during the commission of the present offense, and that probation was not extended due to her failure to pay restitution. Thus, Simmons' argument is refuted by the record, and she has not shown that the district court committed error, plain or otherwise, by applying the two criminal history points.

Simmons next argues that the district court erred by ordering her to pay $28,261,295.08 in restitution to the IRS, and she requests that this court set aside the provision in the plea agreement calling for full restitution to be ordered. She asserts that the restitution amount was not authorized because neither the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A, nor the Victim Witness Protection Act (VWPA), 18 U.S.C. § 3663, are applicable in tax fraud cases brought under Title 26. She further maintains that the restitution amount was erroneous because a restitution calculation, unlike an amount of loss calculation under the guidelines, can be based only on conduct for which the defendant was convicted, not relevant conduct. She contends that the tax loss amount on which the restitution award was based was grossly overstated and that the large amount of restitution is beyond her means and detracts from the possibility of her rehabilitation.

While Simmons challenged the restitution amount at sentencing, she merely asked for leniency, and she did not raise any of the arguments that she raises on appeal. We thus review her arguments for plain error only. *See United States v. Miller*, 406 F.3d 323, 327 (5th Cir. 2005).

While neither the MVRA nor the VWPA automatically applies in a tax fraud case under Title 26, the VWPA states that a district court "may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." § 3663(a)(3). In the plea agreement, Simmons agreed "to pay

restitution for all amounts found by the Court to be due and owing by the defendant to the IRS" and further agreed "that restitution [was] not limited to the amounts charged in the Indictment." As discussed above, the district court's tax loss calculation was not erroneous. Because the restitution order was only to the extent agreed in the plea agreement, it, therefore, was authorized under the VWPA. *See* § 3663(a)(3). The district court did not commit error, plain or otherwise, by ordering Simmons to pay $28,261,295.08 in restitution to the IRS. *See id.*

## VI.

Simmons also argues that her sentence was substantively unreasonable because it created an unwarranted sentence disparity between her and other defendants convicted of preparation of false tax returns. In support of this argument, she cites to numerous cases where a defendant was convicted of preparation of false tax returns and received a far lesser sentence. In a related argument, she asserts that the sentence constituted cruel and unusual punishment in violation of the Eight Amendment. In connection with this argument she "suggests that the court based its sentencing determination on her race, sex and socio-economic status rather than the merits of the case itself."

Because Simmons did not object specifically to the reasonableness of the sentence and did not argue that it constituted cruel and unusual punishment, we review for plain error only. *See United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir. 2007). That standard "erects a more substantial hurdle to reversal of a sentence than" does review for abuse of discretion. *Id.* at 391.

The district court sentenced Simmons to the only sentence within the guidelines sentencing range. As a result, her sentence is entitled to a presumption of reasonableness. *See United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006). While she speculates that the district court based the sentence upon her race, gender, or socio-economic status, the record does not so indicate that the district court did. Because Simmons was sentenced within the

guidelines range, concern about an unwarranted sentence disparity was minimal, and although she lists tax fraud cases where defendants have received lesser sentences, she has not shown that those cases were factually similar to her case. *See United States v. Willingham*, 497 F.3d 541, 544-45 (5th Cir. 2007). As Simmons has not shown that the district court failed to account for a factor that should have received significant weight, relied upon an improper or irrelevant factor, or clearly made an error in judgment in balancing factors, she has not rebutted the presumption of reasonableness. Nor has she shown that the sentence was plainly erroneous. *See United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009), *cert. denied* 130 S.Ct. 1930 (2010). Simmons has also failed to show that her sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. *See Rummel v. Estelle*, 445 U.S. 263, 284-85 (1980); *United States v. Gonzales*, 121 F.3d 928, 943 (5th Cir. 1997).

## VII.

Simmons then argues that the district court violated her Sixth Amendment right to counsel by discharging her appointed counsel and ordering her to retain counsel. She maintains that going to trial would have allowed her to eliminate the restitution that the district court imposed, but does not explain what this has to do with the district court's discharge of her appointed counsel. She concludes that the district court's discharge of her appointed counsel shows that the district court was prejudiced against her.

Although Simmons contested the district court's discharge of her appointed counsel, she did not argue that the discharge of appointed counsel violated her Sixth Amendment rights. We, therefore, review the issue for plain error only. *See United States v. Jackson*, 549 F.3d 963, 977 (5th Cir. 2008).

Having found that Simmons had the financial means to retain counsel, the district court discharged her appointed counsel. *See* 18 U.S.C. § 3006A(c); *see also United States v. Foster*, 867 F.2d 838, 841 (5th Cir. 1989) (noting that the Criminal Justice Act of 1964 requires only that a court appoint counsel to

represent a defendant who has not waived his right to counsel and who is financially unable to obtain counsel).   The record shows that Simmons subsequently retained counsel, and has at all relevant times during the proceedings against her been represented by counsel.[1]  Accordingly, Simmons has not shown that the district court plainly erred by violating her Sixth Amendment right to counsel.  *See* U.S. Const. amend. VI; *Iowa v. Tovar*, 541 U.S. 77, 87 (2004); *Faretta v. California*, 422 U.S. 806, 835-36 (1975).

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

---

[1] Except for the present appeal, where she has chosen to exercise her right to self-representation, the record shows Simmons was represented by counsel at all relevant times during the proceedings against her.